Allen, J.
The testator Joseph Cocke made no provision by his will for his wife ; she never renounced the will; and the question arises, whether, under these cir *252 cumstances, she is entitled to any portion of his personal estate ?
The phraseology of the statute is ambiguous; and I was at one time inclined to think, that no renunciation was necessary, where the will is silent as to the widow. If “ the widow shall not be satisfied with the provision made for her by the will of her husband,” she is to declare she will not take or accept it, “ and renounce all benefit she might claim” under the will. It would, at first view, seem to be a useless act, to refuse that which had not been given, to renounce a benefit where none was conferred. But, upon the supposition that no renunciation would be necessary in case the will contained no provision for the widow, the question still presents itself, to what would she be entitled ? It is not a case of intestacy; the deceased has made a will disposing of the whole of his estate. Where a will is made, and the widow renounces, she is entitled to but a third of the slaves for life; but in case of intestacy, if the deceased leaves no child, the widow is entitled to a moiety. How would she take, where the will makes no provision for her ? the moiety, as in case of intestacy ? or the third, as in case of renunciation ? If a moiety, as in case of intestacy, it would defeat the statute, which, in case the husband has made a will, intended, if the widow does not take under it, to give her one third only of the slaves, whether the husband left a child or not; and if she takes a third, then she must take under the statute, and must be bound by its provisions, which look to the case of a renunciation alone, and declare that “thereupon, she shall be entitled” &c. recognizing but two *253 modes of providing for her, that prescribed by the will, and that which is to take place on her renunciation.
There seems to have been some contrariety of opinion, as to the extent of the husband’s power of disposing of his personalty at common law. According to Blackstone (2 Comm. 492.) by the ancient common law, a man’s goods were to be divided into three equal parts; of which one went to his heirs or lineal descendants, another to his wife, and the third was at his own disposal. Anri this he seems to think continued to be the law, as late as the reign of Charles I. If this were so, it was the law in force at the settlement of Virginia, and it might be argued was the common law brought over by the colonists. “ This law” (Blackstone says) “ is at present altered by imperceptible degrees, and the deceased may now by will bequeath the whole of his goods and chattels, though we cannot trace out when first this alteration begun.” But sir Edward Coke (Harg. Co. Litt. 176. b. note 6.) considers, that this was never the general law, but only obtained in particular places by special custom. The correctness of this opinion is controverted by Blackstone; but in a note in 1 Wms. on Ex’ors 2. it is said, the learned discussion of mr. Somner on this subject, which tends to confirm the correctness of Coke's opinion, seemed to have escaped the notice of Blackstone. The question was discussed in Lightfoot's ex'ors v. Colgin & ux. 5 Munf. 66. where judge Brooke, after adverting to the difference between Coke and Blackstone, proceeds to shew, that when the legislature of Virginia first took up the subject, the common law was understood to be as laid down by Coke: that, at that day, Coke upon Littleton and the Institutes were the oracle of the law in this country, and the text books of lawyers and legislators; that the law, as laid down by Coke, was in the mind of the legislature, when the acts of 1673 and 1705 were passed; and that those statutes were intended to restrain the husband, in the *254 exercise of a preexisting right to dispose of his whole estate by will. If this view of judge Brooke was correct (and it strikes me as being so), the husband, by the common law as understood in Virginia, could dispose whole of his personal property, as he still may in England, without making any provision for his wife: and we must look to our statutes, to ascertain what limitations have been imposed upon this general power, and what remedy has been provided for the widow.
The statute of 1673, 2 Hen. Stat. at large 303. was the first. It makes provision for the wife in case of intestacy ; and then proceeds, “ and in case the husband make a will, that he hath it in his power to devise more to his wife than what is above determined, but not less.” This statute provided no mode by which the widow was to assert her claim.
In 1705, another statute was passed, 3 Hen. Stat. at large 373. The fourth section provided, that when any person dies testate, leaving no more than two children, one third part of his estate, at least, should be given to his wife; if more than two children, she should have at least a child’s part; and if there were no children, not less than a moiety: and if any person should leave a will, wherein a lesser part of his estate should be given to the wife than was directed therein, such will, as to so much thereof as related to the wife, upon her petition to the court where the same should be proved, should be declared null and void; and thereupon she should be empowered to sue for and recover such part of her deceased husband’s estate, as was therein before directed to be given to her. This statute is silent as to the case where no provision has been made for the wife. What, in such case, under that statute, would have been her condition ? The phrase lesser part would seem to imply, that the legislature only intended to provide for the case, where something, but less than she was entitled to, had been given. The literal meaning of the *255 phrase would require that construction as strongly, as the existing statute would seem to require that the will should contain some provision which the widow was to renounce. But if we adopt that construction, we must come to the conclusion, that the legislature intended to give her a remedy, where the will made some provision for her, but left her as at common law, when nothing was given. The common law (as then understood) authorized the husband to dispose of the whole estate. She would, therefore, by this construction, be in a worse condition when the will gave her nothing, than when it gave her something, but less than what she had a right to. The statute shews an intention to alter the then existing law; to limit the authority of the husband, and afford a remedy to the widow. To effectuate that intention, the phrase used (lesser part) must be construed to extend to and include, not only the case of a partial, though an inadequate, provision, but the case also of a total omission to give any thing. If the last case was embraced in the scope of the statute, a petition to the court was the proper remedy, to declare the will null and void as related to her. The fifth section of the statute seems to confirm this view; it provided that if the wife should die before distribution, her representatives should be empowered to sue for and recover so much of the estate as shall be given her by the will, and no more. This excludes the idea that she had any rights other than those given by the will, or conferred upon her by the statute, on setting aside the will by petition. If any such right, other than that under the will, or acquired by renunciation, existed, it must have vested at her husband’s death, and would therefore have passed to her representatives, though she died before distribution : but the statute limited the recovery of her representatives, when she died before distribution, to the property given by the will, and no more.
*256 Another difficulty would occur, if she took in any other way than by renunciation: what would have been the extent of her claim? We have seen, that she was entitled to a third of the slaves in the case of a will when she renounced, whether the husband left a child or not; but in the case of intestacy, there being no child, she was entitled to a moiety: which rule would govern, where the will was silent, and she did not renounce ? So, in regard to the other personal estate; by the common law, according to Blacks tone, and supposing it to have been in force in Virginia, she took a third if a child, but a moiety if no child, was left. Under the statute of 1705, she was entitled to a child’s part only, where there were more than two children.
All these difficulties are obviated by holding, that in the case of testacy, there are but two classes of claims provided for, the claim under the will, and the claim by renunciation. I therefore think that notwithstanding the use of the word lesser in the statute of 1705, the legislature intended to apply the law to the case where nothing was given, as well as to the case where less was bequeathed than she was entitled to; and that it was incumbent on the widow in both cases to petition, and have the will declared null and void as to her, before she could be let into any thing.
Doubts arising whether the statute of 1705 had any relation to the disposition of slaves, and what right the widow had in the slave property of her husband, in case of his dying testate, the statute of 1727, ch. 11. § 21. 4 Hen. Stat. at large, 228. provided, that when a widow was not satisfied with the provision made by her husband’s will, she might, within nine months after his death, renounce, and she should thereupon be entitled to one third of his slaves for life, and moreover to such share of his personal estate, as by the said act (the statute of 1705) was directed. This statute had two objects in view; 1. to remove the doubts as to slaves and *257 to define the widow’s interest; and 2. to furnish her a more convenient remedy; her renunciation in court or by deed, being substituted to the petition and judgment of the court declaring the will null and void as related to her. This statute did not operate upon her rights as to the personal property generally; they remained as defined by the statute of 1705. And if I am correct in supposing that, under that statute, a petition to declare the will null and void was necessary, whether it gave her less than she was entitled to, or nothing, the renunciation, substituted for the petition, by the statute of 1727, was equally necessary in both cases.
The statute of 1727 has been incorporated in the subsequent revisáis, and, with very slight alterations, is the law as it now stands in the code.
It seems to me, therefore, that as the widow made no renunciation, she can claim no part of the slaves or personal estate. This construction of the statute will be attended with the least inconvenience. A widow, for family considerations, may choose to acquiesce in such a disposition of her husband’s estate : it may have been made with her concurrence ; or she may be satisfied with her dower, or with her own separate estate. If it be held, that no renunciation is necessary, where the will makes no provision for her, she, or after her death her representatives, may come at a distant day, and set up her claim ; and the executor who may have delivered the property to the legatees, and the legatees who may have dealt with it as their own, may be called to account. By requiring the renunciation within the time prescribed, in all cases, this inconvenience is avoided: if it be not made within the time, her claim is at an end, and the legatees may rest in security.
The widow has no claim to dower of the land in which her husband died entitled only to an estate in remainder expectant on his mother’s life estate. To entitle a widow to dower, the husband must have been *258 seized in fact or in law. “ If the husband maketh a lease for life of certain lands reserving rent, and he taketh wife and dieth, the wife shall not be endowed; neither of the reversion (albeit, it is within the word tenements) because there was no seisin in deed or in law of the freehold; nor of the rent, because the husband had but a particular estate therein, and no fee simple.” Co. Litt. 32. a. D ’Arcy v. Blake, 2 Scho. & Lef. 387. Blow v. Maynard, 2 Leigh 29. 56.